# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

MERIM BERISHA,

                              Plaintiff,

      v.                                          9:13-CV-1191 (LEK/ATB)

SERGEANT FARRELL,

                              Defendant.

MERIM BERISHA, Plaintiff, *pro se*
JOSHUA L. FARRELL, Ass't Att'y Gen., for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge. In his amended civil rights complaint, plaintiff, a practicing Muslim, alleges that his right to the free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Person Act ("RLUIPA") was violated when defendant ordered him on two consecutive days to shave his beard or face disciplinary sanctions. (Dkt. No. 11, Am. Compl.). Plaintiff's amended complaint also raised due process, equal protection and retaliation claims that were dismissed by Judge Kahn on December 11, 2014.[1] (Dkt. No. 12).

Presently before this court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 19). Plaintiff has responded in opposition to the

---

[1] In addition, defendants Brian Fischer and Anthony Annucci were dismissed as defendants due to a lack of personal involvement. (Dkt. No. 12, at 3).

motion. (Dkt. No. 23). Defendant submitted a reply, to which plaintiff also responded. (Dkt. Nos. 24, 25). For the following reasons, this court agrees with defendants and will recommend dismissal of the amended complaint.

I.  **Summary Judgment**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities,

and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## II. Facts

The relevant facts in this case were outlined in Judge Kahn's December 11, 2013 Decision and Order (Dkt. No. 12) and will be recited herein for clarity and continuity, with additional details drawn from the exhibits submitted by the parties in connection with this motion. This court will cite to additional details from the parties' motion papers as necessary in its analysis of defendant's summary judgment motion.

Plaintiff is an inmate incarcerated at Greene Correctional Facility in Coxsackie, New York ("Greene"). (Am. Compl. at 1). Plaintiff alleges that on September 16, 2013, at approximately 4:30 p.m., he was in the Greene mess hall when defendant pulled him aside to ask if plaintiff had a permit for his beard. (Am. Compl. at 4). Plaintiff responded that he did not, but told Farrell that he was a practicing Muslim who was prohibited from trimming his beard by the Qu'ran. *Id*. Although plaintiff had recently transferred to Greene from another New York State Department of Corrections and Community Supervision ("DOCCS") facility, he was unaware of the DOCCS directive requiring a beard permit for facial hair in excess of one inch. (Dkt. No. 19-3, Joshua L. Farrell Decl. Ex. 1, Transcript of Pl.'s April 24, 2015 deposition ("Dep.") at 13). Plaintiff alleges that defendant then gave him a direct order to cut his beard off and said that he would come to plaintiff's dormitory to see that he complied. *Id*. Plaintiff returned to his dormitory, but did not have access to a beard trimmer. (Dep. at 14). Plaintiff packed his belongings, believing that he was going to be sent to the Special

3

Housing Unit ("SHU"). (*Id.*). At his deposition, plaintiff testified that following this first encounter with defendant, "I wasn't even going to cut my beard. That's honest, I wasn't going to cut my beard. I didn't care." (*Id.*). Defendant never came to check on plaintiff. (*Id.*).

On September 17, 2013, plaintiff informed the Offender Rehabilitation Counselor, Mr. Dobbs ("Dobbs"), and the Superintendent, Mr. Smith ("Smith"), of the prior day's encounter with defendant.[2] (Am. Compl. at 4-5). Smith confirmed that plaintiff was registered in the DOCCS system as a practicing Muslim, and told plaintiff that there would be a temporary hold on cutting his beard. (Dep. at 14). Smith also had plaintiff submit a written request for a DOCCS beard permit, pursuant to the available religious exemption. (Am. Compl. at 5, Dep. at 14-15). Plaintiff asked Smith what he should do if he was stopped or harassed by defendant about his beard. (Dep. at 15). Smith told plaintiff to mention his discussion with the superintendent and advise defendant that he had a temporary hold on shaving. (Am. Compl. at 5; Dep. at 15).

During evening meal service on September 17, 2013, defendant asked plaintiff why he had not shaved his beard, despite his direct order to do so. (Am. Compl. at 5; Dep. at 15). When plaintiff told defendant about the discussion with Smith and the temporary hold on shaving, defendant "went into a rampage" and told plaintiff that he had to comply with defendant's direct order. (Dep. at 15). Defendant did not threaten any physical violence, but based on defendant's statements, plaintiff believed that he

---

[2] Neither Dobbs or Smith were named as defendants in this action.

4

would be sent to "the box," or SHU, if he did not comply.[3] (Dep. at 17). Plaintiff returned to his dorm, obtained a beard trimmer, and shaved his beard. (Am. Compl. at 5; Dep. at 15). Plaintiff claims that he shaved his beard[4] out of fear, and that he would not have done so otherwise, because plaintiff considered the Islamic prohibition on shaving his beard to be a serious religious commitment. (Am. Compl. at 5).

On September 18, 2013, plaintiff filed a grievance alleging that defendant ordered him to shave his beard, in conflict with plaintiff's Muslim faith. (Am. Compl. at 4). The grievance was accepted in part, although the Superintendent concluded that plaintiff had not advised defendant that he applied for an exemption to the grooming policy. (Dkt. No. 23, Ex. D to Pl.'s Mem. of Law). To prevent similar issues from arising in the future, plaintiff was advised to speak to the facility Imam regarding his beard permit, and the DOCCS grooming directive was read at a subsequent security staff line up to address any misunderstandings regarding its implementation. (*Id*.).

On October 25, 2013, DOCCS Assistant Counsel Leslie H. Becher advised plaintiff by letter that she had reviewed his request for a beard permit, and would be recommending that a permit be issued granting him a religious exemption from the one-inch beard rule. (Dkt. No. 23, Ex. A to Pl.'s Memo. of Law). DOCCS records show that the beard permit was formally issued on November 4, 2013. (Dkt. No. 19-4, Ex. 2

---

[3] During his deposition, plaintiff could not recall if the threat of being taken to SHU occurred during his first or second encounter with defendant. (Dep. at 16).

[4] The record is unclear whether plaintiff shaved off his beard completely, or only trimmed it to comply with the one inch limit. (Am. Compl. at 5; Dkt. No. 23, Ex. D to Pl.'s Mem. of Law). Given plaintiff's belief that any alteration of his beard would violate his religious commitment, this ambiguity does not impact the constitutional analysis.

5

to Joshua L. Farrell Decl.).

### III. Compliance with Local Rule ("L.R.") 7.1

As required under L.R. 7.1, defendants have filed a Statement of Material Facts. (Dkt. 19-1.) Plaintiff failed to initially respond to the Statement of Material Facts, but he filed a sur-reply stating that "[t]he facts on record are not in dispute, plaintiff agreeds [sic] with defendant about the 'Material Facts' that plaintiff was not physically harmed as stated on the record." (Dkt. No. 25, ¶ 3). This response does not comply with the requirements of L.R. 7.1(a)(3). Under this rule, the opposing party's response to the movant's statement of material facts "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." Defendant provided plaintiff with notice of L.R. 7.1 and the consequences of non-compliance as part of his summary judgment motion. (Dkt. No. 19, at 3).

Where, as in this case, a party has failed to respond to the movant's statement of material facts in the manner required under L.R. 7.1(a)(3), the L.R. provides that facts in the movant's statement will be accepted as true (1) to the extent they are supported by evidence in the record, and (2) the nonmovant, if proceeding pro se, has been specifically advised of the possible consequences of failing to respond to the motion. *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). However, the Second Circuit, acknowledging a court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that "while a court is not required to consider what the

6

parties fail to point out in their [local rule statements of material facts], it may in its discretion opt to conduct an assiduous review of the entire record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir.2001) (citation and internal quotation marks omitted). In deference to plaintiff's pro se status and his attempt, albeit inadequate, to respond to defendant's statement of material facts, the court has opted to review the entire summary judgment record.

## IV. Free Exercise of Religion

### A. Legal Standards

The First Amendment guarantees the right to the free exercise of religion. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However, the right "is not absolute or unbridled, and is subject to valid penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* No. 04-CV-57, 2007 WL 3046703, at *4 (N.D.N.Y. Oct.17, 2007).

To succeed on a claim under the Free Exercise Clause, the plaintiff must show at the threshold, that the challenged conduct "substantially burdens his sincerely held religious beliefs." *Pugh v. Goord*, 571 F. Supp. 2d 477, 497 (S.D.N.Y. 2008) (quoting *Salahuddin*, 467 F.3d at 274-75 (citing *Ford*, 352 F.3d at 591). The issue of whether a "substantial burden" is required has been discussed at length, and although not

7

specifically decided, recent cases still apply the requirement to Free Exercise cases. *Holland v. Goord*, 758 F.3d 215, 220-23 (2d Cir. 2014); *Walker v. Artus*, No. 9:10-CV-1431(MAD/DEP), 2013 WL 564909, at *8-9 (N.D.N.Y. Sept. 30, 2013) (citing *Salahuddin*, 467 F.3d at 274-75). This court will follow the analysis in *Holland* and will consider the First Amendment claim, assuming that the substantial burden test is still valid.

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") also protects inmates' religious rights. RLUIPA prohibits the government from imposing a substantial burden on a prisoner's religious exercise unless the burden is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc-l(a). For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith. In addition, this interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *Pugh v. Goord*, 571 F.Supp.2d 477, 504–05 (S.D.N.Y.2008); *Graham v. Mahmood*, No. 05–10071, 2008 WL 1849167, at *14 (S.D.N.Y. Apr. 22, 2008); *Gill v. Defrank*, No. 98 Civ. 7851, 2000 WL 897152, at *1 (S.D.N.Y. July 6, 2000) (citing *Boomer v. Irvin*, 963 F. Supp. 2d 227, 230 (W.D.N.Y. 1997)).

B.  **Application**

1.  **RLUIPA Claim**

Plaintiff's amended complaint, which seeks only monetary damages,[5] asserts a RLUIPA claim. (Am. Compl. at 10). It is well-established that monetary damages are not available against state actors in their official capacities for a violation of RLUIPA. *Sossamon v. Texas,* 563 U.S. 277, 293 (2011). In addition, the Second Circuit has held that "RLUIPA does not provide a cause of action against state officials in their individual capacities." *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013). Because his damage claim is precluded, this court recommends that plaintiff's RLUIPA claim be dismissed.

2.  **First Amendment Claim**

Beard grooming standards for all inmates at DOCCS facilities, including Greene, are established by DOCCS Directive 4914(B)(1)(b). Both parties have submitted a copy of this directive in connection with this motion. (Dkt. No. 19-6, Ex. 1 to Mark Farrell Decl.; Dkt. No. 23, Ex. C to Pl.'s Mem. of Law). The directive provides in pertinent part that:

> An inmate may grow a beard and/or mustache, but beard/mustache hair may not exceed one (1) inch in length unless:
>
> a.  The inmate has a Court Order restraining the Department from enforcement; or

---

[5] Injunctive relief is unnecessary because plaintiff now has a beard permit allowing him to have facial hair in excess of one inch. (Dkt No. 19-4, Ex. 2 to Joshua L. Farrell Decl.; Dep. at 32).

> b. The inmate has requested and received an exemption based upon his or her documented membership in a religion which has an established tenet against the trimming of beards including, but not limited to, inmates who are Rastafarian, Orthodox Jew, or Muslim. All inmate requests for such exemption shall be referred to and reviewed by Counsel's Office after consultation with the facility Chaplain. After such review, Counsel's Office will make a recommendation to the Deputy Commissioner for Correctional Facilities. If the request is approved by the Deputy Commissioner for Correctional Facilities, a permit will be issued to the inmate.
>
> Further, pending Counsel's Office's determination of requests for exemption from the one (1) inch rule, inmates shall not be required to cut or trim their beards, disciplined for refusing the order to shave, or subject to repeat orders to shave.
>
> An inmate who refuses to comply with this rule will be given 14 days from the date of the written order to shave in which to request an exemption. If the inmate fails to submit a request for an exemption within 14 days, he may be disciplined for refusal to obey such order.

Plaintiff does not allege that the grooming policy itself violates his right to free exercise of religion – an argument that has been considered and rejected in other cases. *See Fromer v. Scully*, 874 F.2d 69, 75-76 (2d Cir. 1989) (rejecting First Amendment challenge to one inch beard rule); *Young v. Goord*, No. 1-CV-626, 2005 WL 562756, at *8 (E.D.N.Y. 2005), *aff'd* 192 Fed. App'x 31 (2d Cir. 2006) (rejecting RLUIPA challenge to one inch beard rule); *Verdal v. Frantz*, No. 9:01-CV-910, 2002 WL 31309175, at *3 (dismissing First Amendment challenge to separate DOCCS requirement that new inmates shave upon their arrival to prison); *see also Holt v. Hobbs*, __ U.S. __, 135 S. Ct. 853, 868 (2015) (Sotomoyer, J., concurring) (describing New York DOCCS inmate grooming policy as "more permissive" than the complete

10

ban on inmate facial hair that the Supreme Court unanimously found to violate RLUIPA). Instead, plaintiff argues that defendant failed to follow the established DOCCS policy that allows fourteen days for an inmate to submit an exemption request before any disciplinary action is taken. (Am. Compl. at 8). As plaintiff characterized his complaint at his deposition, defendant "just jumped the gun" and ordered plaintiff to immediately shave or trim his beard. (Dep. 28).

Courts generally do not question the centrality of particular beliefs or practices to a faith, or the validity of a litigant's interpretation of those creeds. *Amaker v. Goord*, No. 06-CV-490A, 2010 WL 2595286, at *11 (W.D.N.Y. Mar. 25, 2010). The Supreme Court has rejected the notion that to claim the protection of the free exercise clause, the plaintiff must be "responding to the commands of a particular religious organization." *Frazee v. Ill. Dep't of Employment Sec.*, 489 U.S. 829, 834 (1989). Courts may, however, consider whether an inmate sincerely holds a particular belief and whether the belief is religious in nature. *Id.* (citing *Ford*, 352 F.3d at 590).

Plaintiff has demonstrated that DOCCS recognizes him as a practicing Muslim. (Dkt. No. 23, Ex. B to Pl.'s Mem. of Law). In addition, defendant's motion for summary judgment has not challenged the sincerity of plaintiff's belief that his religion forbids him from shaving or trimming his beard, and this court finds no reason to question it. *See Holt*, __ U.S. __, 135 S. Ct. at 862-63 (2015) (noting that the belief that men must grow beards is widely followed by observant Muslims across the various schools of Islam).

However, even viewing all facts in the light most favorable to the non-moving

11

party, plaintiff has not demonstrated that defendant's actions on September 16-17, 2013 imposed a substantial burden upon plaintiff's religious exercise.[6]  A substantial burden on religious expression is one that "'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Guillory v. Weber*, No. 9:12-CV-280 (LEK/RFT), 2015 WL 1419088, *8 (N.D.N.Y. April 6, 2015) (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 717-18 (1981)).  Plaintiff's encounters with defendant in the mess hall do not rise to that level.  On September 16, 2016, defendant accurately told plaintiff that his beard was in violation of DOCCS policy.  (Am. Compl. at 4).  Plaintiff admitted that he chose to ignore defendant's September 16, 2013 order to shave, and faced no repercussions. (Dep. at 14).  Instead, plaintiff spoke to Dodd and Smith, who advised him that no disciplinary action could take place for at least fourteen days, and helped plaintiff submit an application for a beard permit. (Am. Compl. at 4-5; Dep. at 14-15).  At the time, plaintiff did not express any doubts about the validity of the fourteen day "temporary hold" on shaving, and only asked Smith how to respond if defendant stopped him again. (Dep. at 15).

The next day, September 17, 2013, defendant again challenged plaintiff about the length of his beard.  Plaintiff followed Smith's instructions and advised defendant of his application for a beard permit and the resulting temporary hold.  (Am. Compl. at 5; Dep. at 15).  Even if, as plaintiff contends, defendant "went into a rampage" and used threats and abusive language toward him, plaintiff knew that any disciplinary action

---

[6] Even if injunctive relief were available, dismissal of plaintiff's RLUIPA cause of action would still be warranted because substantial burden is a necessary element of a claim under that statute.

12

related to his beard would be delayed by the terms of Directive 4914. ((Dkt. No. 19-6, Ex. 1 to Mark Farrell Decl.; Dkt. No. 23, Ex. C to Pl.'s Mem. of Law). Moreover, although plaintiff alleged that defendant threatened to take him to SHU, defendant did not issue any disciplinary ticket to plaintiff. (Dkt. No. 19-1, Statement of Material Facts, ¶ 11). Defendant did not make any physical contact, threaten to physically harm plaintiff or attempt to shave plaintiff himself. (Dep. at 16, 28, 31). Besides the two encounters in the mess hall, plaintiff does not allege any further contact with defendant.

Defendant's behavior, while clearly frustrating to plaintiff, does not give rise to a constitutional claim. *See Mack v. Griffin*, No. 9:04-CV-588 (NAM/RFT), 2006 WL 2792736, *7 (N.D.N.Y. Sept. 27, 2006) (granting summary judgment where Muslim inmate alleged that he had been threatened with SHU if he did not comply with DOCCS beard policy); *see also Hamilton v. Erhardt*, No. 10-CV-6234, 2011 WL 3476475, at *2-5 (W.D.N.Y. Aug. 9, 2011) (dismissing claims under Fed. R. Civ. P. 12(b)(6) that defendants ordered inmates to shave his beard while mocking and harassing him, but allowing claim that defendants had later threatened physical harm and punished plaintiff). Plaintiff, who had been advised by Superintendent Smith that no disciplinary action was imminent, never faced a "forced choice" to decide between the "equally unpleasant alternatives" of disciplinary sanctions and abandonment of his religious beliefs. *See Smith,* No. 9:07-CV-1150 (NAM/ATB), 2010 WL 3910086, at *17. As the facts of this case demonstrate, plaintiff had other options that presented a high likelihood of success and would not have impacted his religious beliefs, such as further discussion with Dobbs and Smith or the filing of an administrative grievance.

In addition, plaintiff's encounters with defendant qualify as the type of isolated incident, promptly corrected by the facility, that courts have typically treated as a *de minimis* burden on religious expression. *See, e.g., Williams v. Rock*, 2014 WL 4685035 (N.D.N.Y. Sept. 19, 2014) (staff failure to deliver meals at appropriate time during Ramadan was *de minimis* burden on First Amendment rights); *Smith v. Graziano*, No. 9:08-CV-469 (GLS/RFT), 2010 WL 1330019, at *9 (N.D.N.Y. March 16, 2010) (cancellation of two religious services, that was the result of a "breakdown of communication between prison officials and security staff," constituted a *de minimis* burden on inmate's ability to freely exercise his religion); *Allan v. Woods*, No. 9:05-CV-1280 (NAM/GJD), 2008 WL 724240, at *4-5 (N.D.N.Y. Mar. 17, 2008) (finding that there was no substantial burden where inmate was assigned to work detail on Sabbath one time before officials approved religious accommodation). Prison officials promptly assisted plaintiff with his application for a beard permit after his first encounter with defendant. Responsive measures were also taken after plaintiff filed a grievance related to the second encounter, and plaintiff now has a valid beard permit recognizing his religious exemption.

Based on the record in this case, this court concludes that defendant's actions did not substantially burden plaintiff's ability to practice his religion. Even though plaintiff chose to shave or trim his beard following the alleged threats by defendant, plaintiff did so even though he knew that he had been afforded a fourteen day "temporary hold" on any disciplinary enforcement while his application for a beard permit was pending. At most, defendant's actions imposed a *de minimis* burden on plaintiff's First Amendment

rights. Thus, this court recommends that plaintiff's First Amendment claim be dismissed.[7]

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 19) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 8, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge

---

[7] Defendant also argues that he is entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because the defendant has not violated plaintiff's constitutional rights in the first instance, the court need not reach the issue of whether a reasonable person would have known of the constitutional violation.